O. L. JOYNER ET AL. v. THE REFLECTOR COMPANY AND M. H. HUX.

(Filed 23 October, 1918.)

**1. Appeal and Error—Fragmentary Appeal.**

An appeal from an order disallowing a preference claimed in the funds
in a receiver's hands over other claims filed, and retaining the cause for
further orders for its distribution, is fragmentary, and the exceptions will
be reserved to be passed upon on appeal from final judgment.

2. **Corporations—Mortgages—Torts—Preferences—Statutes.**

> To secure a preference over a mortgage given by a corporation for damages arising in tort, etc., Revisal, sec. 1130, the action should be commenced within sixty days after the registration of the mortgage.

3. **Same—Liens—Judgments—Execution—Receivers—Distribution.**

> Revisal, sec. 1131, confers no lien upon the property of a corporation in favor of one injured by its tort, but eliminates the corporate mortgage in favor of a judgment therefor, duly commenced, which the judgment debtor may collect by execution, except when a receiver has been previously appointed, and then he is entitled to his pro rata distribution of the funds.

4. **Subrogation—Bills and Notes—Endorsers—Mortgages—Evidence—Questions for Jury—Trials.**

> The endorsers on a note of a corporation secured by mortgage on its property are not entitled to subrogation, either legal or conventional, when it is ascertained that the note was paid by the corporation, and not the endorsers, and where there is evidence that the latter had paid it, the question should be submitted to the jury.

5. **Subrogation—Legal—Conventional.**

> As distinguished from legal subrogation, conventional subrogation is founded on the agreement of the parties in the nature of an equitable assignment, while the former exists where one who has an interest to protect, or is secondarily liable, makes payment of the obligation.

6. **Corporations—Torts—Mortgages—Purchase Price—Statutes.**

> A mortgage of a corporation to secure purchase money has priority over a judgment against it arising in tort. *Walker v. L. Co.,* 174 N. C., 60, cited and applied.

APPEAL by Hux, intervenor, from *Allen, J.,* at the May Term, 1918, of PITT.

This action was brought by O. L. Joyner v. The Reflector Company, a corporation, on 24 November, 1916, asking that a receiver be appointed to take charge of the Reflector Company, which was done, L. G. Cooper being appointed receiver. The property of the Reflector Company was sold by said receiver on 19 February, 1917, by virtue of an order of court. H. M. Hux, who had obtained judgment against the Reflector Company for $4,000 for tort committed 12 September, 1912, filed a claim with said receiver for and on account of said judgment, asking that his claim be paid ahead of other claims, or that he be given a preference on account of section 1131 of the Revisal. The receiver ruled against the said Hux and he appealed to the Superior Court and by proper order was allowed to intervene and become a party so as to protect his rights. The receiver held that notes secured in the deed of trust to S. J. Everett dated 25 September, 1912, the total amount of the notes being $5,000, but which had been paid down by the Reflector Company to $3,300, had a preference over other claims. After the said H. M. Hux appealed, the Greenville Banking and Trust Company, the

National Bank of Greenville, and the Farmers Bank, D. J. Whichard, S. J. Everett, R. J. Cobb, F. M. Wooten, C. O'H. Laughinghouse, C. W. Wilson, B. B. Sugg, W. E. Proctor, J. J. Elks, R. C. Flanagan, and H. A. White, who, with the plaintiff Joyner, are the creditors in said deed of trust and the indorsers of said notes, all petitioned to be made parties plaintiff, alleging that at the time of the execution of the deed of trust to S. J. Everett, there was an understanding between the Reflector Company and the endorsers on the notes secured in the deed of trust to S. J. Everett that the notes to the Mergenthaler Linotype Company and the notes to the Miehlé Printing Press and Manufacturing Company should be taken up out of the fund obtained from the deed of trust to S. J. Everett and held by S. J. Everett as trustee for said sureties. This was denied by the said H. M. Hux.

At the January Term, 1918, of the Superior Court, the judge presiding made an order of compulsory reference in the cause to C. C. Pierce to find the facts in the matter and report to the court, all parties excepting to said order and reserving their rights to a jury trial. The matter was heard by C. C. Pierce and report made. The intervenor, H. M. Hux, excepted to the report, and the same came on to be tried at the May Term, 1918, of the Superior Court.

The notes to the Mergenthaler Company and to the Miehle Company were apparently given for the purchase money of certain machines and were secured by mortgages on the machines, the mortgage to the Mergenthaler Company being executed by D. J. Whichard, who did business in the name of the Reflector Company before its incorporation, and the mortgage to the Miehle Company being executed by the Reflector Company, incorporated.

There was evidence that at the time of the execution of the deed of trust of 25 September, 1912, that the notes and mortgages to Mergenthaler and Miehle companies were paid and canceled by the Reflector Company, and also evidence that they were delivered to Everett, trustee, to be held as security for the creditors in the deed of trust, or if payment was made it was by the creditors.

The following verdict was returned by the jury:

1. What was the value of the Mergenthaler Linotype machine on 19 February, 1917, the day of the sale? Answer: "$950."

2. What was the value of the Miehle printing press on 19 February, 1917, the day of the sale? Answer: "$1,650."

3. Were notes of the Reflector Company to the Mergenthaler Linotype Company paid by the Reflector Company and discharged, as alleged by the intervenor? Answer: "No."

4. Were notes of the Reflector Company to the Mergenthaler Linotype Company and mortgage assigned to S. J. Everett as trustee? Answer: "Yes."

5. Were the notes of the Reflector Company to the Miehle Printing Press and Manufacturing Company paid, satisfied and discharged, as alleged by the intervenor? Answer: "No."

His Honor instructed the jury to answer the third and fifth issues "No" and the fourth issue "Yes" if they believed the evidence, and the intervenor Hux excepted.

An order was entered upon the report of the referee and the verdict declaring that Hux was not entitled to a preference over the mortgage creditors and retaining the cause for further order of distribution of the fund, and Hux excepted and appealed.

*F. M. Wooten and Harry Skinner for appellees.*
*Julius Brown and Ward & Grimes for intervenor.*

ALLEN, J. This appeal is premature and must be dismissed, because the order appealed from disposes of only one question of many arising upon the record (*Hinton v. Ins. Co.,* 116 N. C., 222; *Richardson v. Express Co.,* 151 N. C., 61); but upon dismissal, the exceptions, duly taken, are preserved to be passed on upon appeal from the final judgment. *Gray v. James,* 147 N. C., 141.

We have, however, examined the record at the request of both parties, and as another appeal may be avoided by expressing an opinion on the principal questions in controversy, have concluded to do so.

(1) We agree with his Honor in the conclusion that Hux has no preference. He cannot claim a preference under section 1130 of the Revisal because he did not commence an action to enforce his claim within sixty days after the registration of the deed of trust, and section 1131 confers no lien or priority. It simply wipes out the mortgage as against a judgment for tort, so that the judgment creditor may proceed to collect his judgment as if there was no mortgage, by execution if the property is not in the hands of a receiver, or by pro rating with the mortgage creditors if a receiver has taken charge. *Clement v. King,* 152 N. C., 460, and cases cited.

(2) We are of opinion his Honor was in error in directing a verdict on the third, fourth, and fifth issues, as there is evidence that the Mergenthaler and Miehle notes and mortgages were paid by the Reflector Company, the debtor; and if this should be found to be true, there would be no ground for subrogation, legal or conventional, and the distribution of the funds in the hands of the receiver would have to be made without reference to these mortgages. See *Pub. Co. v. Barber,* 165 N. C., 488, for a discussion of the difference between legal and conventional subrogation and the effect of payment by a volunteer.

If these notes and mortgages were not paid by the Reflector Company

there should be specific answers to the following questions as to the Mergenthaler notes and mortgages, and the same as to the Miehle notes and mortgages:

1. Were the Mergenthaler notes and ' mortgage executed before or after the incorporation of the Reflector Company? It would seem that they were executed before, but it is stated in the record as an agreed fact that the company was incorporated 28 May, 1910, and that the Mergenthaler machine was bought 7 June, 1910.

2. If executed before, did the corporation assume the payment of the debt, and was any other paper executed therefor, and if so, what paper?

3. Were these notes and mortgage executed for the purchase money of the linotype machine sold by the receiver?

4. Was it the understanding and agreement when these notes and mortgages were paid in bank they should be kept alive and held by Everett, trustee, for the benefit of the creditors in the deed in trust?

5. If not, were these notes and mortgage paid by the creditors secured in the deed in trust for the purpose of relieving the property in the deed in trust of the lien of the mortgage?

If the fourth question should be answered "Yes," the creditors in the deed of trust would be entitled to the benefit of legal subrogation; and if the fifth "Yes," to conventional subrogation to the extent of the value of the property conveyed at the time of the sale by the receiver; and if the mortgage was executed before the Reflector Company was incorporated, it would have priority over the judgment in favor of Hux, because section 1131 only applies to mortgages executed by corporations, and the same result would follow if the mortgage was executed by the corporation to secure the purchase money under the authority of *Walker v. L. Co.,* 170 N. C., 460.

On the other hand, if the debt secured by the mortgage was paid by the Reflector Company, or if the third and fourth questions should be answered "No," there would be no subrogation, or if the facts are such as to entitle the creditors to subrogation, there would be no preference or priority in their favor if the mortgage was executed by the corporation and not to secure the purchase money.

Legal subrogation is based upon payment and exists where one who has an interest to protect or is secondarily liable makes payment, while conventional subrogation, so named from the convention or agreement of the civil law, is founded upon the agreement of the parties, which really amounts to an equitable assignment. *Liles v. Rogers,* 113 N. C., 197; *Bank v. Bank,* 158 N. C., 250; *Pub. Co. v. Barber,* 165 N. C., 488.

We have expressed an opinion on the questions discussed in the briefs because the fund in the hands of the receiver, not sufficient to pay the creditors, is in danger of being exhausted in litigation, and it seemed

we might enable the parties to settle their controversy without further appeal; but fragmentary appeals must not be encouraged, as they tend to prolong litigation and to increase cost and expense, and those who resort to them must understand that they need not expect anything except a dismissal with costs.

We suggest that the findings of the jury on the third, fourth, and fifth issues be set aside by consent and the questions involved be tried again on account of the erroneous instruction heretofore referred to, which enters into the findings, and would avail the parties on an appeal from the final judgment.

Appeal dismissed.