Civil action to require contribution by transferees to common obligation for gift tax assessment paid by plaintiff.
Plaintiff, in her complaint, alleges in substance: That on 14 March, 1941, the Commissioner of Internal Revenue of the United States issued an official assessment of tax deficiency against her and defendants Arthur Nebel and Marie Nebel and each of them in the amount of $20,111.82, plus interest thereon at the rate of six percent per annum from 15 March, 1937, until paid — stating that it was determined that during the year 1936 William Nebel had made gifts to plaintiff and said defendants of property having an aggregate value of $142,913.62, on which the tax liability to the Federal Government was $20,111.82, plus interest as above stated, and that the Government, being legally barred from collecting such tax from William Nebel, was assessing the full amount thereof against plaintiff and said defendants and each of them and *Page 677 
would collect the full amount of same from plaintiff or said defendants or any one of them as it was by law and statute empowered to do; that by reason of said assessment plaintiff and defendants Arthur Nebel and Marie Nebel and each of them did become legally liable to the United States Government for the payment of the full amount of said assessment; that plaintiff, at large expense and after diligent and continued effort, obtained the consent of duly constituted authorities of the United States Government that said tax assessment would be dismissed and entirely canceled and terminated upon the payment to the Government of the sum of $6,334.96, plus interest at the rate of six percent per annum from 15 March, 1937; that said authorities refused to dismiss or cancel said assessment in consideration of payment of any lesser sum; that plaintiff requested and demanded of defendants Arthur Nebel and Marie Nebel and each of them that they contribute to the payment of said sum, but that they and each of them failed and refused to contribute any amount whatever toward payment thereof; that plaintiff, thereupon being compelled to do so by reason of her legal liability under the aforesaid tax assessment, did on 24 March, 1942, pay to the United States Government the sum of $6,334.96, plus interest thereon from 15 March, 1937, in the amount of $1,910.89, or a total of $8,245.85, and did thereby procure the dismissal and cancellation of the aforesaid tax assessment and the discharge of the entire liability thereunder on the part of the plaintiff and said defendants and each of them to the United States Government; that by reason of the matters alleged as above set forth plaintiff is now legally entitled to require the defendants Arthur Nebel and Marie Nebel and each of them to make contribution to her for their respective fair and equitable shares of the common obligation which she alone has discharged, as above set forth; that of the aggregate property received by plaintiff and defendants Arthur Nebel and Marie Nebel during the year 1936 and totaling in value $142,913.62 as determined in the aforesaid tax assessment, plaintiff received property having a value of $59,598.54 or 41.71% thereof, the defendant Arthur Nebel received property having a value of $77,120.28 or 53.96%, and the defendant Marie Nebel received property having a value of $6,194.80 or 4.33%; and that she, the plaintiff, having paid and satisfied the common gift tax liability is entitled to recover of defendant Arthur Nebel 53.96% of the amount she paid, that is, $4,449.46, and of Marie Nebel 4.33% of the amount she paid, that is, $357.05, with interest on the respective amounts from date of payment 24 March, 1942.
Defendants Arthur Nebel and Marie Nebel, in joint answer filed, deny any liability for gift tax for that they aver that they purchased the stock in question from William Nebel in good faith and for a fair and reasonable consideration and, for this reason, are not liable to plaintiff for *Page 678 
any amount she may have paid. They further deny that plaintiff has paid any amount, as alleged, and aver "that any money that was paid was paid by William Nebel, whose primary debt, if any existed, it was," and that plaintiff is not entitled to recover therefor.
Upon the trial the evidence tends to show these facts:
1. In the year 1936 defendant William Nebel, husband of plaintiff, and father of defendant, Arthur Nebel, and father-in-law of defendant, Marie Nebel, wife of Arthur Nebel, transferred to plaintiff certain cash, real estate and shares of common stock in Nebel Knitting Company, and to defendants, Arthur Nebel and Marie Nebel, each, certain cash and shares of common stock in Nebel Knitting Company, and filed with the constituted authority of the United States a gift tax return for the year 1936, but that no assessment was undertaken or made against him for any deficiency therein.
2. On 14 March, 1941, after the statute of limitation had run against the collection from defendant William Nebel of gift tax for the year 1936, the Commissioner of Internal Revenue of the United States, acting under Internal Revenue Statute, Title 26, Chapter 4, relating to gift tax, having determined that the aggregate value of the property so transferred by William Nebel to plaintiff and to defendants, Arthur Nebel and Marie Nebel, valuing the stock received by them at $280.00 per share, exceeded the amount shown on the return filed by William Nebel for the calendar year 1936 by the amount of $142,913.62, composed of $59,589.54 value of property transferred to plaintiff, $77,120.28 of that to defendant Arthur Nebel and $6,194.80 of that to defendant Marie Nebel, showing thereby a tax deficiency, within the meaning of the gift tax statute, in the amount of $20,111.82, gave separate notices by registered mail to plaintiff and to each of defendants Arthur Nebel and Marie Nebel that "there is determined for assessment against you the amount of $20,111.82 plus interest as provided by law, constituting your liability as a transferee of property of William Nebel of Charlotte, North Carolina, for gift tax for the calendar year 1936, as shown in the accompanying statement," which contained itemized valuation of property each had received as so determined — the liability of Marie Nebel being limited to value of property received by her, and advised each of them that within ninety days from the date of the mailing of the letter of notification each may file a petition with the United States Board of Tax Appeals for a redetermination of the deficiency. Defendants Arthur Nebel and Marie Nebel, each through counsel W. Latimer Brown, C. P. A., and plaintiff through her attorneys, W. S. Blakeney etal., respectively, filed such petitions in due time — that of Arthur Nebel being given docket No. 107846, that of Marie Nebel docket No. 107847, and that of plaintiff docket No. 107858 — each denying liability, and *Page 679 
alleging that the determination as made is erroneous in various respects, among others, that full value had been paid for the stock transferred, and praying that no tax liability be assessed.
3. Thereafter, under date 5 February, 1942, the Clerk of the United States Board of Tax Appeals gave separate notices, under caption and docket number of each proceeding, that a Division of the United States Board of Tax Appeals would sit in courtroom, United States Post Office, at Greensboro, North Carolina, beginning on 23 March, 1942, for hearing in all proceedings shown on the attached list — called promptly at 10 o'clock A.M. — as indicated, that party notified would be expected to answer the call at that time and be prepared for trial when reached, that no continuance would be granted except for extraordinary cause, that failure to appear would be taken as cause for dismissal in accordance with the Rules of Practice, and that in all other respects the party is expected to be familiar with such rules. The notices in the proceeding of defendants Arthur Nebel and Marie Nebel were addressed to their counsel. The three proceedings appeared on the attached list — hearing calendar — in their numerical order, with name of counsel for petitioner set opposite.
4. In the meantime plaintiff, through her attorneys, having obtained an adjustment by redetermination of values of property transferred in the year 1936 by William Nebel to plaintiff and to defendants Arthur Nebel and Marie Nebel by which same was reduced so that the total gift tax liability therefor was redetermined to be $6,334.96, instead of $20,111.82, and thereupon plaintiff, through her attorneys, stipulated and agreed in writing with Bureau of Internal Revenue (a) that "at law and in equity there is an unpaid liability for Federal gift taxes in the amount of $6,334.96, together with interest thereon as provided by law, due for the taxable year 1936, from this petitioner under Section 526 of the Revenue Act of 1932 as embodied in Section 1025 I. R. C. and under Section 510 of the Revenue Act of 1932 as embodied in Section 1009 I. R. C. as a transferee and a donee of the assets of William Nebel of Charlotte, North Carolina," and (b) "that the Board may enter its decision accordingly." Thereupon, on 13 March, 1943, plaintiff, through her attorneys, notified attorney for Arthur Nebel and Marie Nebel by letter, enclosing paper signed by plaintiff, and advising that the amount in this paper would be $6,334.96, and requested that said defendants sign with plaintiff so that plaintiff could proceed to close the matter with the Government. This the said defendants declined to do. And neither Arthur Nebel nor Marie Nebel nor their counsel appeared at Greensboro on 23 March, 1942, as they were notified to do. And when their proceedings docket Nos. 107846 and 107847 were called, "counsel for respondent moved to continue same until payment of deficiency in gift tax *Page 680 
for the year 1936 had been made in the case of Marion Nebel docket No. 107858, wherein a stipulation of deficiency has been filed with the Board." The motion was allowed. And upon the written stipulation above referred to being filed with the Board of Tax Appeals on 23 March, 1942, decision in accordance therewith was entered by the Board on 27 March, 1942.
Furthermore, plaintiff delivered to Collector of Internal Revenue a check signed by her and on her bank account dated 24 March, 1942, payable to his order for $8,245.85, "In full settlement, deficiency gift tax assessment against Arthur Nebel, Mrs. Marion Nebel and Mrs. Marie Nebel. Tax $6,334.96. Interest through 3-26 — $1,910.89. Total, $8,245.85." And same was received by the Collector and deposited to credit of Treasury of the United States on 27 March, 1942.
5. Thereafter, on 14 May, 1942, the Bureau of Internal Revenue, through its counsel, moved to dismiss the proceedings docket Nos. 107846 and 107847, respectively, upon the ground as recited in docket No. 107846, that:
"1. On, to wit, March 14, 1941, deficiency notices were sent by registered mail by the Commissioner to Mrs. Marion Nebel, Mr. Arthur Nebel and Mrs. Marie Nebel, all of Charlotte, North Carolina, asserting liabilities against each of them in the amounts of $20,111.82, $20,111.82, and $11,194.80, respectively, plus interest as provided by law, as transferees of the property of William Nebel on account of gift taxes in the amount of $20,111.82 allegedly due from said William Nebel for the calendar year 1936.
"2. On, to wit, March 27, 1942, pursuant to agreed stipulation in settlement of the entire deficiency in gift tax for 1936 asserted against said William Nebel, plus interest thereon, this Board entered its order and decision in the case of Mrs. Marion Nebel, Docket No. 107,858; `That there is an unpaid liability at law and in equity on the part of this petitioner for gift tax in the amount of $6,334.96, together with interest thereon as provided by law, for the calendar year 1936, as a transferee and a donee of the assets of William Nebel of Charlotte, North Carolina.'
"3. On, to wit, March 27, 1942, the said amount of $6,334.96 plus interest thereon to the date of payment in the amount of $1,910.89, or a total of $8,245.85, was paid to the Collector of Internal Revenue, Greensboro, North Carolina, by, or on behalf of the said Mrs. Marion Nebel as transferee and donee of William Nebel.
"4. The liability of said William Nebel for gift tax for 1936 as agreed for purpose of settlement, plus interest thereon, having been thus paid and satisfied by said alleged transferee, the respondent does not desire to *Page 681 
prosecute further the case of this petitioner, Arthur Nebel, as transferee and donee of William Nebel on account of the same tax liability."
The grounds for the motion in docket No. 107847 are the same except that they relate to Marie Nebel. These motions were set for hearing on day calendar before a Division of the Board at its Washington office, Constitution Avenue, at 12th Street, Northwest, at 9:30 a.m., on 3 June, 1942, notice of which was addressed to W. Latimer Brown, C. P. A., Johnston Building, Charlotte, North Carolina. On 3 June, 1942, there was no appearance for petitioners. Thereafter, on 12 June, 1942, formal order of dismissal was entered in and under caption of docket No. 107846 and No. 107847, respectively, as follows: "The liability of William Nebel for gift tax for 1936, plus interest thereon, having been paid by Mrs. Marion Nebel as transferee and donee of said William Nebel, and respondent having announced at open hearing on June 3, 1942, that he does not desire to prosecute the appeal of the above petitioner to transferee and donee of William Nebel, it is
"ORDERED: That this proceeding is dismissed for lack of prosecution on the part of the respondent and that there is now no liability at law or in equity on the part of this petitioner as transferee and donee of William Nebel for gift tax for the year 1936."
Defendants, Arthur Nebel and Marie Nebel, by cross-examination, undertook to elicit evidence that the money paid by plaintiff was the money of William Nebel. Further, they offered to show (a) what they paid for the stock, (b) what was the reasonable market value of the stock during the year 1936 and on down to 1940, (c) what William Nebel said to them about paying the tax himself, and (d) that no judgment was ever rendered against them by the Board of Tax Appeals for any gift tax, all of which, except as shown below, was excluded upon objection. And in these respects said defendants tendered issues which were refused. However, Arthur Nebel did testify that after his attorney received the letter of 13 March, 1942, from plaintiff's attorney, he, Arthur Nebel, told William Nebel in presence of Mr. Blakeney that he was not going to pay any gift tax — that it wasn't his liability and he wasn't going to pay it, and that William Nebel said he was was going to pay it anyway — that the tax was going to be paid; and, on cross-examination, he testified "I stated that my father in my presence said the gift tax would be paid if I would transfer certain stock to him; I didn't transfer that stock to him."
The case was submitted to the jury upon these issues, which were answered as shown:
"1. Did the plaintiff pay to the United States Government the sum of $8,245.85 by reason of notice of tax deficiency assessment received *Page 682 
by her from the United States Commissioner of Revenue on or about March 14, 1941, as alleged in the complaint? Answer: Yes.
"2. If so, did the plaintiff pay said sum in discharge of a common obligation of the plaintiff and the defendants, Arthur Nebel and Mrs. Marie Nebel, as alleged in the complaint? Answer: Yes.
"3. What portion, if any, of said sum is the plaintiff entitled to recover of the defendant, Arthur Nebel? Answer: $4,449.46.
"4. What portion, if any, of said sum is the plaintiff entitled to recover of the defendant, Mrs. Marie Nebel? Answer: $447.05."
From judgment for plaintiff upon the verdict, defendants Arthur Nebel and Marie Nebel appeal to the Supreme Court and assign error.
The challenge of appealing defendants to the correctness of the judgment below is directed in the main to the refusal of the court to grant their motions, aptly made, for judgment as in case of nonsuit. C. S., 567. Decision in this respect is dependent upon the basic question as to whether appealing defendants are bound by the decision of the Board of Tax Appeals on 27 March, 1942, in the proceeding upon petition of plaintiff in accordance with redetermination of value of property transferred in the year 1936 by William Nebel to plaintiff and to defendants Arthur Nebel and Marie Nebel upon which the gift tax liability was fixed at $6,334.96, instead of $20,111.82, the amount specified in the notice of 14 March, 1931, given by Commissioner of Internal Revenue to plaintiff and to said defendants.
As basis for consideration and clear understanding of this question, it is appropriate to refer to the Gift Tax Act of 1932, Act of Congress 6 June, 1932, Chapter 209, 47 Stat. 245, as amended 10 May, 1934, Chapter 277, in effect in 1936 at the time it is alleged that William Nebel made the gifts in question, in so far as same is pertinent here. The Act imposes a tax upon the transfer of property by gift by any individual during any calendar year beginning with the year 1932. Section 501. If the gift be in property, the value of it at the date of the gift shall be considered the amount of the gift. Section 506. Any individual who within any such year makes any transfer of property by gift shall make a return under oath as prescribed on or before 15 March following the close of the year. Section 507. The tax imposed shall be a lien upon all gifts so made for ten years from the time same are made, and if not paid when due (that is, on or before 15 March following the close of the calendar year, Section 509), the donee of the gift shall be personally liable for such tax to the extent of the value of *Page 683 
such gift. Section 510. The amount of the tax shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of three years after the return was filed. Section 517. However, as soon as practicable after the return is filed the Commissioner shall examine it and shall determine the correct amount of the tax. Section 511. If the Commission determines that there is a deficiency in respect of the tax imposed in the Act, that is, the amount by which the tax imposed by the Act exceeds the amount shown as the tax by the donor upon his return, Section 512, the Commissioner is authorized to send a notice of such deficiency to the donor by registered mail, and within 90 days (increased from 60 to 90 days by amendment 10 May, 1934, Chapter 277, Section 501-48 Stat. 755) after such notice is mailed, the donor may file a petition with the Board of Tax Appeals for a redetermination of the deficiency. No assessment of a deficiency in respect of the tax imposed by the Act and no distraint or proceeding in court for its collection shall be made, begun or prosecuted until such notice has been mailed to the donor, nor until the expiration of such 90-day period (amendment 1934, supra), nor, if a petition has been filed with the Board, until the decision of the Board has become final. Section 513 as amended in 1934, supra. If the donor files a petition with the Board, the entire amount redetermined as a deficiency by the decision of the Board which shall become final shall be assessed and shall be paid upon notice and demand from the Collector. Section 513 (b). And as to transferred assets, the Gift Tax Act provides: That the amount of the liability, at law or in equity, of a transferee or donee of property of donor, in respect of the tax, interest and additions, imposed by the Act, shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in the tax imposed by the Act. But the period of limitation for assessment of any such liability of a transferee or donee shall be within one year after the expiration of the three year period for assessment against the donor. Section 526 (a) and (b).
In substantial conformity, these provisions have been brought forward and are embodied in the Internal Revenue Code — Title 26, Chapter 4, Sections 1000-31.
To summarize, the gift tax is assessed upon the aggregate value of the gifts made by the donor within the calendar year, and is the liability of the donor. But if the tax be not paid when due, the donee becomes liable for the whole amount of the tax to the full extent of the value of the gifts received. And if there be more than one donee, the liability for the whole tax is separate, and the Commissioner of Internal Revenue may proceed against any one or all of the donees as he may elect to do. *Page 684 
The Supreme Court of the United States has so held in a case involving similar facts. Phillips v. Commr. of Internal Revenue, 283 U.S. 588,75 L.Ed., 1289.
There a corporation had distributed all of its assets among its stockholders, and then dissolved. Thereafter the Commissioner of Internal Revenue made a deficiency assessment against the corporation for income and profits tax, a part of which was not paid. Thereupon, the Commissioner, acting under statute similar to provisions of Section 513 of Gift Tax Act of 1932, sent notice that he proposed to assess against, and collect from, Phillips the entire remaining amount of the deficiencies. No notice of such deficiencies was sent to any other transferee, and no suit or proceeding was instituted against them. Upon petition by Executors of Phillips for a redetermination, the Board of Tax Appeals held that the estate was liable for the full amount of such deficiencies. The order of the Board was affirmed by the U.S. Circuit Court of Appeals and by the U.S. Supreme Court. Justice Brandeis, writing for the Supreme Court, disposed of the question of separate liability in this manner: "One who receives corporate assets upon dissolution is severally liable, to the extent of assets received, for the full payment of taxes of the corporation; and other stockholders and transferees need not be joined. Non-joinder cannot affect or diminish the several liability of the stockholder or transferee sued . . . The individual several liability of Phillips may be fully enforced by the United States in the present proceeding. Whatever the petitioners' rights to contribution may be against other stockholders who have also received shares of the distributed assets, the Government is not required, in collecting its revenue, to marshal the assets of a dissolved corporation so as to adjust the rights of the various stockholders."
Therefore, applying the above principle in the light of the provisions of Section 513 (b) of the Act to the case in hand, the decision of the Board of Tax Appeals, when it became final, fixed the entire gift tax liability of William Nebel for all gifts made in the year 1936 to plaintiff and to appealing defendants, and the payment of it by plaintiff constituted a complete discharge of such tax, and freed appealing defendants of liability, if any, to the Government on account of the property received by them.
In consequence plaintiff seeks equitable contribution. Is she entitled to it? On the facts on this record, we think she is. "The principle of contribution is equality in bearing a common burden. The general rule is that one who is compelled to pay or satisfy the whole or to bear more than his just share of a common burden or obligation, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment *Page 685 
of their respective shares. In other words, when any burden ought, from the relationship of the parties or in respect of property held by them, to be equally borne and each party is in aequali jure, contribution is due if one has been compelled to pay more than his share. The doctrine is founded not upon contract, but upon principles of equity." 13 Am. Jur., sec. 3, page 6. See also Moore v. Moore, 11 N.C. 358, 15 Am. Dec., 523; Bunker v.Llewellyn, 221 N.C. 1, 18 S.E.2d 717. The principle here stated is differentiated from that applied in Godfrey v. Power Co., ante, 647, where the statutory right of contribution was invoked, rather than equitable contribution as here.
Defendants Arthur Nebel and Marie Nebel knew that in accordance with the notice from the Commissioner there had been determined for assessment against each of them as a transferee of property from William Nebel gift tax liability in the amount of $20,111.82 — the liability of Marie Nebel being limited to the value of the property received by her. Each of them had petitioned the Board of Tax Appeals for a redetermination of the deficiency, and proceedings were pending before that Board. A time had been set and a place named for hearings thereon. In the order of the calendar their proceedings would have been called before that of the plaintiff. They had been informed that an adjustment of the values had been worked out by which the Bureau of Internal Revenue had agreed with plaintiff upon a redetermination of the deficiency upon which decision of the Board of Tax Appeals would rest. They were advised as to the terms of such redetermination and were asked to come in and share their part of the burden. They said it was not their burden. Yet, they had been notified by the Clerk of the Board that in accordance with the Rules of Practice of the Board their failure to appear at the time and place set for the hearing would be taken as cause for dismissal of each of their proceedings, and that in all other respects they would be expected to be familiar with such rules. They were thereby specifically charged with knowledge of the rule that in cases where a petition for a redetermination of a deficiency had been filed, decision of the Board dismissing the proceeding "shall be considered as its decision that the deficiency is the amount determined by the Commissioner." Internal Revenue Code Title 26, Section 1117. In like manner they were charged with knowledge of provisions of Section 513 (b) of the Gift Tax Act that "no part of the amount determined as a deficiency by the Commissioner but disallowed as such by the decision of the Board, which has become final, shall be assessed or be collected by distraint or by proceeding in court with or without assessment." In other words, they had knowledge, constructively, at least, that the decision of the Board upon the proposed redetermination of liability would fix the whole amount of the gift tax. They knew that in such event they *Page 686 
would be relieved of expense of further litigation. In the light of this knowledge, and even though to plaintiff they denied liability, they failed to appear at the time and place named when they had the opportunity to show effectively lack of liability, and by their silence permitted the decision of the Board to be entered as against the plaintiff on 27 March, 1942, and stood by to see plaintiff pay the whole tax — thereby exonerating them of liability to the Government. Under such circumstances they have by their conduct fixed the common liability, and equity will require them to stand to it. "He who is silent when it is his duty to speak will not be permitted by the law to speak when such silence has made it his duty thereafter to remain speechless." Stacy, C. J., in Sugg v. Credit Corp.,196 N.C. 97, 144 S.E. 554.
Appealing defendants contend, however, that they are not bound by the decision of the Board of Tax Appeals on 27 March, 1942; that in so far as they are concerned there has been no determination of a common liability; that the payment of the tax by plaintiff was voluntary; that they have the right to set up in this action all defenses they might have had in the original proceeding to which they were parties before the Board of Tax Appeals. And they rely upon the case of Phillips v. Parmley,302 U.S. 233, 82 L.Ed., 221, in which the stockholder who had to pay the tax deficiencies to which the case of Phillips v. Commr. of InternalRevenue, supra, related, sues other stockholders for equitable contribution. In that case the Court held that "The right of a stockholder transferee to contribution arises under the general law and does not differ from that of any other person who has paid more than his fair share of a common burden. The right to sue for contribution does not depend upon a prior determination that the defendants are liable. Whether they are liable is the matter to be decided in the suit. To recover, a plaintiff must prove both that there was a common burden of debt and that he has, as between himself and the defendants, paid more than his fair share of the common obligations. Every defendant may, of course, set up any defense personal to him." This holding must be read in the light of the facts of the case. There the defendants had had no notice of the tax assessment which the Government had made and prosecuted against the plaintiffs alone, and defendants had not had an opportunity to assert any defenses they may have had. Not so here, the defendants had the opportunity at the only time it would have been effective, and they let it pass.
Due consideration has been given to other exceptive assignments and no prejudicial error is found.
In the judgment below we find
No error. *Page 687